## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

| | |
|---|---|
| **AMERICAN VENDING GROUP, INC.**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| **v.**  ) | **Civil Action No. WGC-07-2277** |
| ) | |
| **UNITED STATES**  ) | |
| ) | |
| **Defendant.**  ) | |

---

## MEMORANDUM OPINION

Plaintiff American Vending Group, Inc. ("American Vending") brought this action against Defendant, the United States, alleging the United States improperly assessed and levied a Miscellaneous Penalty, Failure to File Correct Information Returns, or that the amount of the penalty assessed and levied is excessive.  The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment.  *See* Document Nos. 16 - 18.  Pending before the Court and ready for resolution is Defendant's Motion for Summary Judgment (Document No. 22).  Plaintiff filed an Opposition (Document No. 24) and Defendant a Reply (Document No. 27).  A hearing was held on August 1, 2008.  This matter is ripe for resolution.

## FACTUAL BACKGROUND

The following facts are undisputed.  American Vending was incorporated in the State of Maryland on January 1, 1998 and commenced operations in July 1998.  Document No. 24, J. Blick Aff. ¶ 5.  American Vending provides and services vending machines in local office buildings in Montgomery and Prince George's Counties, Maryland.  *Id.*, J. Blick Aff. ¶ 6.  John

1

S. Blick is the sole stockholder and general manager of American Vending.  *Id.*, J. Blick Aff. ¶ 1.

In the middle of 1998 American Vending hired two employees, John Hohl and Michael

Goodman, to service the vending machines.  *Id.*, J. Blick Aff. ¶ 11.  Before 1998 Mr. Blick

operated his vending machine business as a sole proprietor.  *Id.*, J. Blick Aff. ¶ 3.

     American Vending retained Ellen C. Rorrer as a bookkeeper for part of 1998 and 1999.

*Id.*, Rorrer Aff. ¶ 1; J. Blick Aff. ¶ 8.  Ms.  Rorrer was retained to prepare American Vending's

payroll and all federal and Maryland employment filing requirements.  *Id.*, J. Blick Aff. ¶ 9.  Ms.

Rorrer prepared American Vending's 1998 Wage and Tax Statements, Internal Revenue Code

("IRC") Form W-2 and the Transmittal of Wage and Tax Statement, IRC Form W-3 and

delivered those completed forms to John Blick.  *Id.*, Rorrer Aff. ¶¶ 2-3; J. Blick Aff. ¶ 10.  John

Blick gave American Vending's 1998 Wage and Tax Statement, IRC Form W-2, to American

Vending's two employees, John Hohl and Michael Goodman.  *Id.*, J. Blick Aff. ¶ 12.  John Blick

has no record or recollection of transmitting American Vending's 1998 Form W-2 and 1998

Form W-3 to the Social Security Administration.  *Id.*, J. Blick Aff. ¶ 13.

     On December 3, 2001, the Internal Revenue Service ("IRS") sent a "Notice of Penalty

Charge" to American Vending.[1]  This notice states in pertinent part,

> You have been charged a penalty under Section 6721 of the Internal
> Revenue Code for the following reason:   Failure to file Forms W-2.
>
>          *         *         *
>
> A penalty has been charged for each Form W-2 that was not filed as
> required by Section 6051 of the Internal Revenue Code.  Our records
> indicate that both the Social Security Administration and the Internal
> Revenue Service have been in contact with you to attempt to secure

---

[1] The notice was addressed to American Vending at the following address:  6701 Democracy Boulevard
555, Bethesda, Maryland 20817.

these Forms W-2.

The penalty for intentional disregard of the filing requirements is the greater of $100 per required return or 10 percent of the aggregate amount of items required to be reported.  If you have not filed Forms W-2 for the period requested, please submit them to IRS (not the Social Security Administration) . . . .The applicable portion of the penalty will be abated for Forms W-2 that you submit.

If you believe you have reasonable cause why we shouldn't charge these penalties, you may send us an explanation and ask us to remove or reduce any of the penalties we have charged.  Send us a specific explanation for each penalty you wish us to remove or reduce by Dec. 24, 2001.  Please include any documents that will support your position.  If you agree with the penalty, please send the amount due now.

Document No. 24, Ex. 201.  The penalty assessed totaled $3,114.53.

On July 26, 2002, the IRS sent a letter to American Vending,[2] stating in pertinent part,

We made a thorough search but are unable to locate the tax return, Form 1120,[3] you filed for tax period Dec. 31, 1998.

Please file another return(s) and attach copies of your Form(s) W-2 (Wage and Tax Statement) and any other schedules or documents included with your original return(s). . . . If you paid tax with the original return(s) you filed, please include copies of both sides of your canceled check(s).  If you didn't pay tax at that time and tax is still due, please include your payment.

*Id.*, Ex. 202.  American Vending acknowledged receipt of this notice and responded in the letter of August 18, 2002.  In this letter American Vending admitted receiving three requests for its 1998 U.S. Corporation Tax Return and claimed it timely responded each time.  *Id.*, Ex. 207.

---

[2] This letter was addressed to American Vending, in care of Edward A. Blick (who, with a power of attorney, acted on behalf of American Vending), at the following address:  619 Blick Drive, Silver Spring, Maryland 20904.

[3] U.S. Corporation Income Tax Return.

3

On December 27, 2002, the IRS sent another letter to American Vending.[4]  This letter states in part,

> PLEASE CALL US ABOUT YOUR OVERDUE TAXES OR TAX RETURNS
>
> We have no record that you responded to our previous notices.  As a result, your account has been assigned to the office for enforcement action, which could include seizing your wages or property.  It's important that we hear from you within 10 days from the date of this letter.

*Id.*, Ex. 203.  American Vending responded in the letter of January 15, 2003.  "We have no record of civil penalties assessed [against] American Vending Group for tax year 1998.  Please forward to us the transcript for American Vending Group for tax year 1998."  *Id.*, Ex. 208.

On June 27, 2005, the IRS sent American Vending[5] a "Past Due Tax Statement." American Vending owed a total of $3,501.04.  The IRS directed American Vending to pay by July 7, 2005.  *Id.*, Ex. 206.  In the September 22, 2005 letter, American Vending acknowledged receipt of the June 27, 2005 letter.  American Vending responded by enclosing "copies of our three letters, dated May 2, 2002, August 18, 2002 and January 15, 2003 concerning this matter. The letters speak for themselves. Also enclosed is a letter from the Philadelphia Internal Revenue Service Center, dated April 22, 2002, acknowledging receipt of our payment of $4,500 for tax year 1998.  We have also enclosed our 1998 U.S. Corporation tax return with attachments. . . ."  *Id.*, Ex. 209.

In a subsequent letter of November 18, 2005, American Vending explained to the IRS the

---

[4] This letter was sent to American Vending at the following address:  6701 Democracy Boulevard 555, Bethesda, Maryland 20817.

[5] This notice was sent to American Vending at a residence or building on Nocturne Court in Rockville, Maryland 20850.

purpose of the letter.

> First, we would like to know how the service arrived at the amount of the penalty.  In 1998, we had no payroll for the first two quarters and two employees in the third quarter and one employee in the fo[u]rth quarter.

> Second, we would like copies of any correspondence you forward to us prior to December 3, 2001 concerning this matter including copies of certified mail receipts[.]

*Id.*, Ex. 211.

On December 26, 2005, the IRS sent another notice to American Vending[6] stating in

relevant part,

**<u>Urgent!!</u>**
**We intend to levy on certain assets.  Please respond NOW.**
(To avoid additional penalty and interest, pay the amount you owe within ten days from the date of this notice).

> Our records indicate that you haven't paid the amount you owe.  The law requires that you pay your tax at the time you file your return.  This is your notice, as required by Internal Revenue Code 6331(d) of our intent to levy (take) any state tax refunds that you may be entitled to if we don't receive your payment in full.  In addition, we will begin to search for other assets we may levy.  We can also file a Notice of Federal Tax Lien, if we haven't already done so.  **To prevent collection action, please pay the current balance now.**

*Id.*, Ex. 205.  The current balance as of December 26, 2005 was $3,615.98.

On February 4, 2006, the IRS sent American Vending[7] a "Final Notice of Intent to Levy

and Notice of Your Right to a Hearing."  *See id.*, Ex. 204.  On February 9, 2006, American

Vending sought the assistance of the Taxpayer Advocate Service.  *See id.*, Ex. 212.

---

[6] This notice was sent to American Vending at the following address:  10605 Concord Street, Suite 440, Kensington, Maryland 20895.

[7] This notice was sent to American Vending at the following address:  10605 Concord Street, Suite 440, Kensington, Maryland 20895.

On September 21, 2006, the IRS levied $3,916.06 from American Vending's bank account for payment of the 1998 miscellaneous penalty.[8]  On October 3, 2006, American Vending filed Form 843, *Claim for Refund and Request for Abatement*, seeking a refund of $4,019.79 as overpayment of the IRS § 6721 penalty.  *See* Document No. 22, Ex. 102.  The IRS did not issue a decision within six months of American Vending's claim for refund.  *See* 26 C.F.R. § 301.6532-1(a).[9]  On August 28, 2007, American Vending filed its Complaint (Document No. 1) which it subsequently modified by filing an Amended Complaint (Document No. 13).

## JURISDICTION

This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1346(a)(1).[10]  *See* Am. Compl. ¶ 1; Am. Answer ¶ 1.  American Vending is incorporated in the State of Maryland and its principal place of business is in the State of Maryland.  Venue is proper in this district pursuant to 28 U.S.C. § 1402(a)(2).[11]

---

[8] According to American Vending, the total amount of the penalty was $4,119.79.  An overpayment credit in the amount of $203.73 was applied by the IRS to the outstanding penalty.  *See* Document No. 22, Ex. 102 at 2.

[9] (a) No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum shall be begun until whichever of the following first occurs:

    (1) The expiration of 6 months from the date of the filing of the claim for credit or refund, or
    (2) A decision is rendered on such claim prior to the expiration of 6 months after the filing thereof.

[10] (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
    (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

[11] (a) Any civil action in a district court against the United States under subsection (a) of section 1346 of this title may be prosecuted only:

*       *       *

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrision v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  The court may not weigh evidence or make credibility determinations.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  However, on those issues on which the

---

(2) In the case of a civil action by a corporation under paragraph (1) of subsection (a) of section 1346, in the judicial district in which is located the principal place of business or principal office or agency of the corporation[.]

nonmoving party will have the burden of proof, it is that party's responsibility to confront the

motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at

256.

> In *Celotex Corporation*, the United States Supreme Court stated,

> > In cases like the instant one, where the nonmoving party will bear
> > the burden of proof at trial on a dispositive issue, a summary
> > judgment motion may properly be made in reliance solely on the
> > "pleadings, depositions, answers to interrogatories, and admissions
> > on file." Such a motion, whether or not accompanied by affidavits,
> > will be "made and supported as provided in this rule," and Rule 56(e)
> > therefore requires the nonmoving party to go beyond the pleadings
> > and by her own affidavits, or by the "depositions, answers to
> > interrogatories, and admissions on file," designate "specific facts
> > showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324.

> However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick*

*v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina*

*Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert.*

*denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the nonmoving party

for a jury to return a verdict for that party. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted).

## <u>ANALYSIS</u>

> The parties agree that, as a matter of law, "an assessment of the Commissioner is

presumptively correct and the taxpayer has the burden of proving it wrong." *Faulconer v.*

*Commissioner*, 748 F.2d 890, 893 (4th Cir. 1984); *see* Def.'s Mem. Supp. Mot. Summ. J.

("Def.'s Mem.") at 6-7; Pl.'s Mem. Supp. Opp'n ("Pl.'s Mem.") at 10. If the assessment is

arbitrary however the presumption that the IRS' assessment is correct does not apply. *Dellacroce v. Commissioner*, 83 T.C. 269, 1984 WL 15606 (Tax Court 1984).

Pursuant to 26 U.S.C. § 6721 the IRS has the authority to impose a penalty against a taxpayer who fails to file correct information returns. A higher penalty may be assessed against a taxpayer who intentionally disregards filing information returns. *See id.* § 6721(e). The statute however does not define "intentional disregard." One must look instead to the Regulations for guidance.

26 C.F.R. § 301.6721-1, *Failure to file correct information returns*, supplements this statute. "Intentional disregard" is defined in paragraph f, subsection 2.

> A failure is due to intentional disregard if it is a knowing or willful—
>
> (i) Failure to file timely, or
>
> (ii) Failure to include correct information. Whether a person knowingly or willfully fails to file timely or fails to include correct information is determined on the basis of all the facts and circumstances in the particular case.

In determining whether the failure is due to an "intentional disregard," the Regulations list facts and circumstances to consider in paragraph f, subsection 3.

> The facts and circumstances that are considered in determining whether a failure is due to intentional disregard include, but are not limited to—
>
> (i) Whether the failure to file timely or the failure to include correct information is part of a pattern of conduct by the person who filed the return of repeatedly failing to file timely or repeatedly failing to include correct information;
>
> (ii) Whether correction was promptly made upon discovery of the failure;
>
> (iii) Whether the filer corrects a failure to file or a failure to

include correct information within 30 days after the date of any written request from the Internal Revenue Service to file or to correct; and

(iv) Whether the amount of the information reporting penalties is less than the cost of complying with the requirement to file timely or to include correct information on an information return.

The Government contends American Vending intentionally disregarded its duty to file the informational returns. American Vending however asserts its failure to file the informational returns was inadvertent, a mistake. If evidence supports the Government's position, the penalty assessed is correct. However if American Vending presents evidence creating a genuine issue as to a material fact that its conduct was a mistake, then the presumption that the IRS' assessment is correct does not apply.

The Second Circuit has defined the phrase "intentional disregard" in 26 U.S.C. § 6721 which this Court finds persuasive. "[T]he 'intentional disregard' set forth in § 6721's penalty provision means conduct that is willful, a term which in this context requires only that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously." *Gerald B. Lefcourt, P.C. v. United States*, 125 F.3d 79, 83 (2d Cir. 1997). Applying this definition as well as § 301.6721-1(f) of the Regulations, the Court now considers the facts and circumstances in this case.

John Blick, the sole stockholder and general manager of American Vending, is a commercial real estate agent. He has a Bachelor of Science degree from the University of Maryland. *See* Document No. 22, Ex. 103 (Resp. to Interrogatory No. 4). He incorporated American Vending on January 1, 1998. American Vending commenced operations in July 1998. In his affidavit John Blick makes several assertions relevant to this litigation.

10

7.  In 1998, I had no experience in the accounting and local, state and federal licensing, tax and other requirements of operating a vending machine business.

*          *          *

13.  I have no record or recollection that I filed Transmittal of Wages and Tax Statement, IRC Form W-3 and the Wage and Tax Statement, IRC Form W-2 to the Social Security Administration.

14.  In 1998, I had no knowledge of the filing requirements for the Transmittal of Wages and Tax Statement, IRC Form W-3 and the Wage and Tax Statement, IRC Form W-2 to the Social Security Administration.

*          *          *

17.  The vending machine place of business has been relocated five times since 1998.

18.  As the results of the many moves, many of the records were either discarded or lost in the moves.

19.  I am no longer in possession of copies of the W-2s and W-3 prepared by the bookkeeper in 1998.

Document No. 24, J. Blick Aff. ¶¶ 7, 13-14, 17-19.

As a college graduate, the Court finds John Blick has or should have the ability to read and understand Form W-2, "Copy A For Social Security Administration."  That form directs the filer to send the entire page of Copy A of Form W-2 with Form W-3 to the Social Security Administration.  *See* Document No. 27, App. 1 at 2.  Copy D of Form W-2 should have been retained by the employer, American Vending.  *See id.*, App. 1 at 9.  Form W-3 is entitled *Transmittal of Wage and Tax Statements*.  That form instructs the filer to send the entire page along with the entire page of Copy A of Form W-2 to the Social Security Administration.  *See id.*, App. 1 at 11.  John Blick may have lacked knowledge of the filing requirements because he

11

did not take the time to read the forms.  Failing to read does not absolve a filer of his or his

corporation's legal obligations.  Of course if one does not read the instructions, one does not

know of the obligation to file the informational returns.

1998 was American Vending's year of incorporation.  John Blick, in mid year, began

operating his vending machine business as a corporation.  Before 1998 John Blick operated his

vending machine business as a sole proprietorship.  In 1998 John Blick, on behalf of American

Vending, hired two employees.  John Blick knew he lacked the expertise or experience in

accounting, payroll, and taxes and thus hired a bookkeeper.  American Vending's desire to

comply with the law, *i.e.*, the obligation to file Forms W-2 and W-3, is demonstrated by its

decision to retain a bookkeeper to prepare the payroll and all federal and State employment filing

requirements.  *Tysinger Motor Co., Inc. v. United States*, 428 F. Supp. 2d 480, 485 (E. D. Va.

2006).  The bookkeeper, in fact, prepared the 1998 Forms W-2 and W-3 for American Vending.

It is undisputed that the two employees were given their 1998 Forms W-2.  Tax year 1998 was

the first time American Vending had an obligation to file informational returns.

The Government concedes that this failure to file the informational returns occurred only

once, during American Vending's first year of operations.  The fact that American Vending has

not had a pattern of not filing informational returns, the Government argues, should not be

considered in American Vending's favor.  "A taxpayer who voluntarily shirks its duties once still

can intentionally disregard[] that duty."  Def.'s Mem. at 10.  While this assertion is true, at this

stage of the litigation, the evidence does not show an "intentional disregard."  The evidence does

not demonstrate that American Vending voluntarily, purposefully, or willfully failed to file the

informational return.  Contrarily, the evidence shows that the failure to file was accidental or

12

inadvertent.  The Court finds this factor favors American Vending.

The second factor under § 301.6721-1 of the Regulations is whether correction was promptly made upon discovery of the failure to file.  John Blick has no recollection of filing Forms W-2 and W-3.  He did not "discover" his failure; the IRS notified him of his failure.  The Court finds this factor is not applicable to the facts of this case since American Vending did not independently discover that it failed to file the informational returns.

The third factor is whether the filer corrects the failure to file within 30 days after the date of the IRS' written request.  American Vending argues the first notice received was the December 3, 2001 Notice of Penalty Charge.  The notice was not requesting the filer take corrective action but assessing a penalty for not filing Forms W-2.  "I was not contacted by IRS or the Social Security Administration concerning this matter until almost three years after the filing date of the 1998 W-2s and W-3."  Document No. 24, J. Blick Aff. ¶ 20.  The December 3, 2001 Notice however contradicts John Blick's affidavit.  "Our records indicate that both the Social Security Administration and the Internal Revenue Service have been in contact with you to attempt to secure these Forms W-2."  *Id.*, Ex. 201.  The Court presumes both the Social Security Administration and the IRS contacted American Vending in writing.  The Court notes, according to John Blick's affidavit, American Vending has relocated five times since 1998.  The notices and letters from the IRS to American Vending list addresses in Bethesda, Maryland; Kensington, Maryland; and Rockville, Maryland.  With the frequency of the relocations it is possible that correspondence before December 3, 2001 was not received.  Even though the December 3, 2001 correspondence is a notice and not a request to take corrective action, American Vending nonetheless had an opportunity to submit the 1998 Forms W-2.  "If you have

not filed Forms W-2 for the period requested, please submit them to IRS . . . . The applicable

portion of the penalty will be abated for Forms W-2 that you submit." *Id.* American Vending

did not submit the 1998 Forms W-2 within 30 days of the IRS' request and thus this factor favors

the Government.

The final factor is whether the amount of the information reporting penalty is less than

the cost of complying with the filing requirement.  The Government argues this factor should not

favor American Vending since "[a] cheap reporting duty does not absolve a taxpayer from

having to pay for [its] intentional acts."  Def.'s Mem. at 10.  It is not disputed that the cost of

compliance, *i.e.*, the cost of a postage stamp, is significantly less than the penalty of $4,019.79.

Any rational taxpayer would comply with the reporting requirement and avoid the risk of a

significant penalty.  The Court finds this factor favors American Vending.

In summary the Court finds two factors favor American Vending, one factor favors the

Government and one factor is not applicable to facts of this case.  These findings are supported

by comparing this case to *Gerald B. Lefcourt, P.C. v. United States*, 125 F.3d 79 (2d Cir. 1997)

and *Tysinger Motor Company, Inc. v. United States*, 428 F. Supp. 2d 480 (E.D. Va. 2006).

The *Lefcourt* case concerned a law firm representing a client facing federal drug and

money laundering charges.  Lefcourt's client paid the law firm over $10,000 in cash for legal

services.  Title 26, section 6050I of the United States Code requires any person engaged in a

trade or a business, who during the course of that trade or business receives more than $10,000

in cash, to report the amount received, the date of the transaction, and the nature of the

transaction.  Form 8300 is the form used to report the cash transaction.  The law firm submitted a

Form 8300 and, reported receiving cash in excess of $10,000 as well as the date the cash was

14

received.  The name of the payor however was deliberately withheld by the law firm.  The law

firm asserted that disclosing the client's name would prejudice the interests of the client.  In

addition, the law firm claimed the Fifth and Sixth Amendments of the Constitution and the

Lawyers' Code of Professional Responsibility protected the confidentiality of the client's

information.  *Lefcourt*, 125 F.3d at 81.

      The Second Circuit found the law firm was aware of Form 8300's requirement that the

payor or client be identified but nevertheless the law firm chose not to disclose the information.

"Once it is determined . . . that the failure to disclose client-identifying information was done

purposefully, rather than inadvertently, it is irrelevant that the filer may have believed he was

legally justified in withholding such information."  *Id.* at 83.

      *Tysinger Motor* concerned a family owned automobile dealership.  In 1992 the IRS

conducted a Compliance Review to determine if Tysinger Motor was filing Form 8300 as

required.  The IRS discovered that Tysinger Motor had not reported several cash transactions in

excess of $10,000.  The IRS conducted a second Compliance Review in 1996.  The IRS again

discovered Tysinger Motor had not been consistent in filing the Form 8300.  Nominal penalties

were assessed against Tysinger Motor.  Additionally, the IRS required the owner of the company

as well as the Chief Financial Officer ("CFO") to sign an Acknowledgment of Requirement to

File Form 8300.  Thereafter the owner of the company directed the CFO to implement a system

to identify and record every cash transaction over $10,000.  The CFO devised a system and

described the system to the IRS agent who conducted the 1996 Compliance Review.  The IRS

agent advised such a system would be fine.  Tysinger Motor thereafter implemented the system.

      When the IRS conducted another Compliance Review for the tax years of 1999 and 2000

it discovered four cash transactions over $10,000 that Tysinger Motor failed to report on Form

8300.  For failing to file these informational returns the IRS assessed Tysinger Motor $25,000

per transaction for a total of $100,000.  Tysinger Motor paid the penalty, appealed

unsuccessfully to the IRS, and thereafter filed a complaint seeking a refund of the $100,000.

The Eastern District of Virginia Court ruled in favor of Tysinger Motor finding,

> There is no proof that anyone at the company made a conscious decision not to report the transactions; the failures to report were simply mistakes.  Tysinger [Motor]'s desire to comply with the law is demonstrated by its efforts to set up a system that would identify reportable transactions.  Tysinger [Motor]'s intent is further demonstrated by the fact that it filed a Form 8300 for half the reportable transactions.  That the compliance system had an internal flaw which resulted in its not working one hundred percent of the time does not prove that it was intended to be a sham.  The IRS has produced no evidence from which the Court could even infer that [the CFO] intentionally designed a flawed compliance system.

*Tysinger Motor*, 428 F. Supp. 2d at 485.

The Court finds, based on the evidence presented, the facts of this case are more

analogous to *Tysinger Motor*.  Contrary to *Lefcourt*, American Vending claims its conduct was

inadvertent.

> Plaintiff['s] desire to comply with the law is demonstrated by i[t]s efforts to timely file all employment tax returns and timely pay the tax for all the subsequent quarters and years, for ten years, the entire time Plaintiff was in the vending machine business.  Plaintiff's failure to file its 1998 Transmittal Wages and Tax Statements, IRC Form W-3 and two Wage and Tax Statements with the Social Security Administration was an isolated incident, the action of an uninformed and first time filer.

Pl.'s Mem. at 12.

American Vending has raised genuine issues as to a material fact regarding whether its

failure to file the informational returns (Forms W-2 and W-3) constitutes an "intentional

16

disregard."

**CONCLUSION**

For the foregoing reasons, the Court finds there are genuine issues as to a material fact and thus Defendant is not entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An Order will be entered separately denying Defendant's Motion for Summary Judgment.

August 28, 2008                                    /s/
_____                    _____
      Date                                    WILLIAM CONNELLY
                                                    UNITED STATES MAGISTRATE JUDGE